UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
                                                             :
SECURITIES EXCHANGE COMMISSION,                              :
                                                             :  **ORDER AND OPINION**
                              Plaintiff, :  **GRANTING MOTION TO**
    -against-                                             :  **INTERVENE AND STAY, AND**
                                                             :  **DENYING MOTION TO DISMISS**
TREVOR R. MILTON,                                            :  **FOR IMPROPER VENUE OR**
                                                             :  **TRANSFER VENUE**
                              Defendant. :
                                                             :  21 Civ. 6445 (AKH)
                                                             :
------------------------------------------------------------ X

ALVIN K. HELLERSTEIN, U.S.D.J.:

        Defendant Trevor R. Milton ("Defendant") currently faces both criminal and civil charges for securities fraud. Both arise out an alleged scheme to defraud investors by inducing them to purchase shares of Nikola Corporation ("Nikola"), an electric- and hydrogen-powered vehicle and energy company founded by Defendant in 2015. Plaintiff Securities Exchange Commission's ("Plaintiff" or the "SEC") civil suit alleges violations of Section 17(a) of the Securities Act of 1933, 15 U.S.C. § 77(q)(a), and Section 10(b) of the Exchange Act of 1934, 15 U.S.C. § 78j(b) and Rule 10b-5, 17 C.F.R. § 230.10b-5. Compl., ECF No. 1. Defendant also has been indicted by a grand jury for alleged violations of 15 U.S.C. §§ 78j(b) & 78ff; 17 C.F.R. § 240.10b-5 (securities fraud); 18 U.S.C. § 2; 18 U.S.C. §§ 1348 and 2 (securities fraud); and 18 U.S.C. §§ 1343 and 2 (wire fraud). Case No. 21-CR-478 (ER). Both cases were initiated on July 29, 2021.

        On August 9, 2021, Defendant moved to dismiss the SEC's case for improper venue, pursuant to Fed. R. Civ. P. 12(b)(3) and 28 U.S.C. § 1406(a), or to transfer venue, pursuant to 28 U.S.C. § 1404(a). (ECF Nos. 12, 21). The same day, the United States of America (the "Government") moved to intervene, pursuant to Fed. R. Civ. P. 24, and to fully

stay the civil case pending the outcome of the criminal proceedings.[1] (ECF No. 13). Both motions are before me now, and for reasons provided below, the Government's motion to intervene and stay the civil action is granted, and Defendant's motion to dismiss or transfer venue is denied.

## BACKGROUND

The following allegations are taken from the SEC's complaint and include only those necessary to decide the pending motions. Defendant is the founder and former Chief Executive Officer ("CEO") and Executive Chairman of the publicly-traded Nikola Corporation, an electric- and hydrogen-powered vehicle and energy company that Defendant founded with the primary goals of manufacturing semi-trucks that run on alternative fuels with low or zero emissions and building an alternative fuel station infrastructure to support those vehicles. ¶¶ 1, 2, 13.[2] Defendant founded Nikola in 2015 and was its CEO from that time until June 2020, when the company began trading publicly on the NASDAQ stock exchange. ¶¶ 13, 14. To achieve its goals, Nikola needed to raise billions of dollars. ¶ 2. The SEC alleges that, in part, Defendant did so, around the time Nikola began to sell shares to the public on NASDAQ, by engaging in a scheme to defraud investors by inducing them to purchase shares of Nikola by making false and misleading statements online and through the media about Nikola's products, technological capabilities, and commercial prospects. ¶ 4.

In March 2020, Nikola announced its plan to go public through a merger with VectoIQ, a special purpose acquisition company ("SPAC") headquartered in New York, New York. ¶¶ 15, 21, 24. On June 3, 2020, VectoIQ consummated a business combination with Legacy Nikola pursuant to a Business Combination Agreement, dated March 2, 2020 (the

---

[1] The Government requested that I stay briefing on the merits of Defendant's motion to dismiss or transfer venue; however, I denied the request, *see* ECF No. 25. Accordingly, I consider only whether to stay the remainder of the civil action, particularly civil discovery.
[2] Unless otherwise noted, "¶" refers to paragraphs in the SEC's Complaint, ECF No. 1.

"Business Combination Agreement"). Under the Business Combination Agreement, a wholly-owned subsidiary of VectoIQ merged into Legacy Nikola, with Legacy Nikola remaining as the surviving company and as a wholly-owned subsidiary of VectoIQ, which then changed its name to Nikola Corporation1 (the "Business Combination"). ¶ 16. Between March 2, 2020 and June 3, 2020, investors could buy and sell VectoIQ stock anticipating that upon the completion of the Business Combination, an investor's ownership of VectoIQ stock would make than an equity owner of Nikola. ¶ 24. VectoIQ also raised approximately $525 million from institutional investors in a private investment in public equity ("PIPE") offering. ¶ 22. Defendant participated in the PIPE marketing efforts by making presentations at investor meetings. ¶ 22.

Following the announcement that Nikola would go public through the merger with VectoIQ, and in the run-up to that transaction, and before Nikola produced a single commercial product or had any revenues, Defendant made statements on social media and gave many podcast, television, and print and online media interviews, touting the company, its vehicles, and its capabilities, ¶¶ 3, 4, 6, 34, 35, 46–153, as a part of a deliberate communications strategy (a public relations blitz) intended to heighten interest in Nikola and to encourage retail investors to purchase Nikola stock, thereby increasing the stock price. ¶¶ 6, 7.

However, Defendant's social media posts and media appearances painted a picture of Nikola that diverged from then-current reality. ¶ 4. The SEC alleges that Defendant repeatedly made false and misleading statements in tweets from his personal Twitter account, posts to his personal Instagram account, tweet from Nikola's corporate Twitter account, in Nikola press releases, and in television and podcast appearances, in which Defendant was identified as Nikola's CEO or Executive Chairman. ¶¶ 4, 47. The statements concerned core aspects of Nikola's products, technological advancements, and commercial prospects, and included false claims that:

- Nikola's first semi-truck prototype could be driven under its own power and using a misleading video to create the impression that the prototype was driving under its own power;

- Nikola was producing hydrogen, and doing so at a cost that was four times less than the prevailing market rates and therefore profitable;

- Nikola had significantly developed or completed a prototype of an electric pickup track using Nikola's proprietary components;

- Nikola had billions and billions of dollars of committed truck orders;

- Nikola had developed a game-changing battery technology that it was manufacturing and developing in-house; and

- the total cost of ownership of Nikola's trucks was 20 to 30 percent below that of diesel vehicles.

¶ 4, 46–153. (The criminal case involves all of the foregoing false and misleading statements, save those regarding lower cost of ownership. *See* Memorandum in Support of Motion to Intervene and Stay, ECF No. 14, at 9.) In sum, the SEC alleges that Defendant violated federal securities laws and regulations by engaging in a fraudulent scheme to deceive retail investors about Nikola's products, technical advancements, and commercial prospects by flooding the market with false and misleading information about Nikola. ¶ 1.

## DISCUSSION

I. The Government's Motions to Intervene and Stay

    A. Motion to Intervene

Under Fed. R. Civ. P. 24, a party may intervene as of right if it "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest."

Fed. R. Civ. P. 24(a)(2).  Alternatively, Rule 24(b)(2) provides for permissive intervention when the movant "has a claim or defense that shares with the main action a common question of law or fact."  Here, the Government claims that its application satisfies both these provisions given the effect that the civil proceedings would have on the criminal case and the identity of claims and facts between the parallel actions.

"It is well-established that the United States Attorney may intervene in a federal civil action to seek a stay of discovery when there is a parallel criminal proceeding, which is anticipated or already underway, that involves common questions of law or fact."  *SEC v. Downe*, No. 92-CIV-4092, 1993 U.S. Dist. LEXIS 753, at *11 (S.D.N.Y. Jan. 26, 1993); *accord. SEC Comm'n v. Carroll*, No. 19-CIV-7199, 2020 U.S. Dist. LEXIS 46929, at *4 (S.D.N.Y. Mar. 17, 2020).  The Government has "a discernible interest in intervening in order to prevent discovery in the civil case from being used to circumvent the more limited scope of discovery in the criminal matter."  *SEC v. Chestman*, 861 F.2d 49, 50 (2d Cir. 1998).  Following *Chestman*, district courts in this Circuit routinely have held that the Government may intervene as of right.  *See, e.g.*, *SEC v. El-Khouri*, No. 19-CV-9744, 2021 WL 601652 (S.D.N.Y. Jan. 26, 2021); *SEC v. Recoin Grp. Found.*, LLC, No. 17-CV-5725, 2018 WL 10529810, at *1 (E.D.N.Y. Jan. 31, 2018).  I therefore find that the Government may intervene as of right.

Defendant opposes the Government's intervention, arguing that the Government lacks the necessary interest and, alternatively, that intervention as of right is inappropriate because the SEC can adequately protect the Government's interest.  Both arguments are unpersuasive.  As to the first argument, *Chestman* makes clear that the Government has a "discernible interest," where as here, it seeks to intervene to limit the adverse effects of civil discovery on a parallel criminal proceeding.  As to the second argument, Defendant relies on an out-of-Circuit district court case, *SEC v. Holcom*, No. 12-CIV-1623-H, 2013 WL 12073831 (S.D. Cal. Sept. 6, 2013), where the district court held that the SEC could adequately protect the

Government's interest because "as a fellow representative of the United States government, [it was] capable of protecting the United States' interest . . . by itself seeking a stay, or through appropriate protective orders or other mechanisms." *Id.* at *1-2. Defendant's reliance on *Holcom* is misplaced, as *Holcom*'s holding and reasoning runs contrary to the weight of district court cases in this Circuit, which routinely find that the United States's criminal interest is not adequately protected by the presence of the SEC, an agency not tasked with enforcing the criminal laws. *See, e.g.*, *SEC v. Berman*, No. 20-CIV-10658, 2021 WL 2895148, at *2 (S.D.N.Y. June 8, 2021) ("[T]he parties to this civil litigation do not represent the Government's interests with respect to the investigation and enforcement of the federal criminal statutes.").

Accordingly, because the Government seeks to intervene to limit the potentially adverse effects of allowing civil discovery, and the SEC may not adequately protect the Government's interest, the motion to intervene as of right is granted. Moreover, in light of the overlap between the civil and criminal cases against Defendant, even if the Government were not permitted to intervene as of right, I would also find permissive intervention warranted. *See* Fed. R. Civ. P. 24(b)(2) (allowing permissive intervention where the movant "has a claim or defense that shares with the main action a common question of law or fact").

B. Motion to Stay

The Government seeks a full stay of this matter, citing a significant risk of interference with the criminal case should Defendant be allowed to proceed with full-fledged civil discovery, the absence of prejudice to any of the parties, and the preservation of judicial resources based on the likelihood that the criminal matter will resolve many of the issues presented by the civil action. The SEC takes no position on the Government's motion; however, Defendant opposes, arguing that the Government has not met its burden to show that a stay is warranted.

"While staying a civil case is an extraordinary remedy, courts will not hesitate to grant a stay when the interests of justice seem to require it." *SEC v. LaGuardia*, No. 19-CV-5895, 2020 WL 476439, at *2 (S.D.N.Y. Jan. 23, 2020) (internal quotation marks and citations omitted); *see also Kashi v. Gratsos*, 790 F.2d 1050, 1057 (2d Cir. 1986) ("[A] court may decide in its discretion to stay civil proceedings ... when the interests of justice seem ... to require such action." (internal quotation marks and citations omitted)). In determining whether to stay a civil action in light of a criminal prosecution, courts in this Circuit consider:

> (1) the extent to which the issues in the criminal case overlap with those presented in the civil case;
>
> (2) the status of the case, including whether the defendants have been indicted;
>
> (3) the private interests of the plaintiffs in proceeding expeditiously weighed against the prejudice to plaintiffs caused by the delay;
>
> (4) the private interests of and burden on the defendants;
>
> (5) the interests of the courts; and
>
> (6) the public interest.

*Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012). The overlap of issues in the criminal and civil proceedings is the threshold factor to be considered," *United States v. Eberhard*, No. 03-CR-562, 2004 U.S. Dist. LEXIS 5029, at *5 (S.D.N.Y. Mar. 30, 2004) (collecting cases), and "[t]he strongest case for granting a stay is where a party under criminal indictment is required to defend a civil proceeding involving the same matter." The party seeking a stay "bears the burden of establishing its need." *Id.* at 97 (cleaned up).

The Government has met its burden, as the relevant *Louis Vuitton* factors weigh in favor of granting the stay. First, the overlap of issues is significant. The two cases involve the same alleged fraudulent scheme, the same facts, witnesses, and evidence. In cases, such as this, where the Government seeks a stay, courts have recognized that "[r]efusing to grant a stay might

7

also expand the rights of criminal discovery beyond the limits of Rule 16(b) of the Federal Rules of Criminal Procedure, expose the basis of the defense to the prosecution in advance of trial, or otherwise prejudice the case." *See Carroll*, 2020 U.S. Dist. LEXIS 46929, at *10 (quoting *Volmar Distribs. v. New York Post Co.*, 152 F.R.D. 36, 39 (S.D.N.Y. 1993). Such concerns are present here and thus weigh in favor of granting a stay.

Second, this is not a case in which the defendant is under criminal investigation but has not been indicted, where a stay may unduly delay a civil case while the parties await the resolution of a possible criminal case. Not only has Defendant been indicted, a factor that alone weighs strongly in favor of a stay, *see, e.g.*, *SEC v. Shkreli*, No. 15-CV-7175, 2016 U.S. Dist. LEXIS 36374, at *5 (E.D.N.Y. Mar. 22, 2016) ("[T]he strongest argument for granting a stay is where a party is under criminal indictment"); *In re Par Pharm, Inc. Sec. Litig.*, 133 F.R.D. 12, 13 (S.D.N.Y. 1990) ("The weight of authority in this Circuit indicates that courts will stay a civil proceeding when the criminal investigation has ripened into an indictment."), Defendant's criminal trial is scheduled to begin September 21, 2022, *see* Minute Entry, dated June 29, 2022, No. 21-CR-478. No undue delay will result from staying civil discovery.

Third, as to the Plaintiff's interests and potential prejudice, because the SEC has not taken a position on this motion, this factor is neutral.

Fourth, although Defendant opposes the stay, I find that granting the stay will not prejudice Defendant in the civil action and is, in fact, in Defendant's interest. A stay of civil discovery will not deprive Defendant of information pertaining to the charges against him. Indeed, Defendant will receive documents and other materials as part of the Government's Rule 16 discovery, including documents received from the SEC, Nikola, and third-party companies. The productions in the criminal matter will benefit Defendant given the above-noted overlap between the cases. I further find that a stay is also not likely to result in the destruction of

evidence or failure of witnesses' memories, as the same witnesses are likely to be called in both the criminal and civil cases, and thus, their testimony will be preserved.

In addition, staying discovery, particularly the taking of depositions will benefit Defendant, because Defendants in parallel criminal cases typically seek to avoid taking depositions, because if they assert their Fifth Amendment privilege, an adverse inference can be drawn against them in the civil case. *See Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976). Although as indicate above, the SEC takes no position, I would note that allowing civil discovery to proceed could prejudice the SEC in this action because it would result in largely one-sided discovery, as Defendant would be able to notice depositions, gather scores of documents and witness testimony from the SEC, without being subjected to the same process. *See SEC v. Saad*, 229 F.R.D. 90, 91 (S.D.N.Y. 2006).

Fifth, the interests of the courts and considerations of judicial economy also weigh in favor of granting a stay. Given the overlapping issues, allowing the criminal case to proceed will promote an efficient resolution of both the criminal and civil cases. The outcome of the criminal case will affect the conduct and scope of the civil proceeding, likely simplifying and narrowing the issues to be tried. *See SEC v. Contorinis*, No. 09-CV-1043, 2012 WL512626, at *2 (S.D.N.Y. Feb. 3, 2012) ("Courts in this District have consistently found that a defendant convicted of securities fraud in a criminal proceeding is collaterally estopped from relitigating the underlying facts in a subsequent criminal proceeding.").

Finally, the public interest also weighs in favor of granting a stay. The public has a weighty interest in the prosecution of criminal matters, and as other courts in this District have observed, "the public's interest in preserving the integrity of criminal proceedings can be undermined . . . when discovery proceeds in parallel civil and criminal litigation." *See SEC v. Blaszczak*, No. 17-CV-3919, 2018 U.S. Dist. LEXIS 2289at *3 (S.D.N.Y. Jan. 3, 2018)). "First, broad disclosure of the essentials of the prosecution's case may lead to perjury and manufactured

9

evidence. Second, revelation of the identity of prospective witnesses may create the opportunity for intimidation. Third, criminal defendants may unfairly surprise the prosecution at trial with information developed through discovery, while the self-incrimination privilege would effectively block any attempts by the Government to discover relevant evidence from the defendants." *Id.* (cleaned up).

In sum, I find that permitting civil discovery would risk the integrity of the criminal proceedings and, accordingly, grant the Government's request for a full stay of discovery. *See United States v. Percevault*, 490 F.2d 126, 129 (2d Cir. 1974) (noting that the Jencks Act, 18 U.S.C. § 3500, "represents a legislative determination that access to a witness'[s] statements could be useful in impeaching a witness but was not intended to be utilized in preparation for trial"); *SEC v. Beacon Hill Asset Mgmt. LLC*, 02-CV-8855, 2003 U.S. Dist. LEXIS 2727, at *1 (S.D.N.Y. Feb. 27, 2003) ("The principal concern with respect to prejudicing the government's criminal investigation is that its targets might abuse civil discovery to circumvent limitations on discovery in criminal cases.").

III.    Defendant's Motion to Dismiss for Improper Venue or Transfer Venue

     A.    Motion to Dismiss for Improper Venue

Venue for the SEC's claims are governed by Section 20 of the Securities Act, 15 U.S.C. § 77t, and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. Under the Securities Act, venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business, or in the district where the offer or sale [of a security] took place, if the defendant participated therein." 15 U.S.C. § 77v(a). Under the Exchange Act, venue is proper "in the district wherein any act or transaction constituting the violation occurred," as well as in any "district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 78aa (emphasis added). Venue need only be proper under either the Securities Act or the Exchange Act for it to be proper for all claims under both statutes. *See, e.g., SEC v. Contrarian*

10

*Press*, LLC, No. 16-CV-6964, 2017 WL 4351525, at *2 (S.D.N.Y. Sept. 29, 2017). Under Second Circuit precedent, "any nontrivial act in the forum district which helps accomplish a securities law violation is sufficient to establish venue." *Steinberg & Lyman v. Takacs*, 690 F. Supp. 263, 267 (S.D.N.Y. 1988). The act "need not constitute the core of the violation, but should be an important step in the fraudulent scheme." *SEC v. Rust*, No. 16-CV-3573, 2017 WL 239381, at *1 (S.D.N.Y. Jan. 17, 2017) (citing cases) (cleaned up). "Given the nature of securities fraud actions, it is well-established that the special venue provisions should be liberally construed." *SEC v. 800America.com, Inc.*, No. 02-CV-9046, 2006 WL 3422670, at *5 (S.D.N.Y. Nov. 28, 2006).

Venue is plainly proper because the complaint alleges that Defendant engaged in conduct in this District that substantially contributed to effectuating the fraudulent scheme charged. Specifically, it alleges that Defendant consummated the Business Combination Agreement with VectoIQ, a company headquartered in New York, which caused Nikola to become a publicly-traded company listed on an exchange located in this District. The Business Combination was a fundamental step to the fraudulent scheme because, without the merger, Defendant could not have defrauded retail investors as there would not have been any public investors in Nikola, and because Defendant defrauded both retail investors who bought Nikola stock but also those who bought VectoIQ stock.

In addition, the complaint alleges that Defendant made false and misleading statements from within the District, for example, in a televised appearance on *Fast Money*, which is taped on the floor of the New York Stock Exchange in New York, New York. This too constitutes a nontrivial act within the forum that further supports venue in this matter.

Defendant argues that venue is improper because the thrust of the SEC's allegations is that he made false and misleading statements that were directed nationwide, and that most of his alleged misrepresentations or false statements were, in fact, made from Arizona

11

or Utah. Defendant specifically disputes that his appearances on nationwide media, alleged to have been taped and broadcast from New York, New York provide venue. He claims that although shows may have been taped from within this District, the footage makes clear that he was not in studio; Defendant claims he made his appearances from Arizona or Utah. This too is unavailing because even if Defendant made a media appearance from a location outside the District, his call or videocall into the District is a sufficient basis for establishing venue. *See Steinberg & Lyman*, 690 F. Supp. at 267 ("It is clear that a phone call made into the district in furtherance of a conspiracy to violate the securities laws is sufficient venue in that district.").

In sum, the complaint alleges that Defendant took non-trivial acts within this District that were important to effectuating the scheme to defraud. Defendant's arguments at best establish that venue may also be proper in another forum; they do not establish that venue is improper here. Accordingly, the motion to dismiss for improper venue is denied.

   B.  Motion to Transfer Venue

Even if venue is properly laid in the Southern District of New York, a defendant may move to transfer a civil action to any other district or division where it might have been brought for the convenience of parties and witnesses and in the interest of justice. *See* 28 U.S.C. § 1404(a). Decisions to transfer lie within the discretion of the Court and are determined on a case-by-case analysis of convenience and fairness to the parties. *Boehner v. Heise*, 410 F. Supp. 2d 228, 241 (S.D.N.Y. 2006).

Courts undertake a two-step inquiry to decide motions to transfer venue under § 1404(a). *See Enigma Software Grp. USA, LLC v. Malwarebytes, Inc.*, 260 F. Supp. 3d 401, 407 (S.D.N.Y. 2017) (citing *Everlast World's Boxing Headquarters Corp. v. Ringside, Inc.*, 928 F. Supp. 2d 735, 743 (S.D.N.Y. 2013). They must first determine whether the action could have been brought in the transferee district, *see id.*, and if so, "whether transfer would be an appropriate exercise of the Court's discretion." *Everlast*, 928 F. Supp. 2d at 743 (citation

omitted). In assessing whether transfer is an appropriate exercise of discretion, courts balance various factors: "(1) the convenience of the witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to sources of proof; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the forum's familiarity with the governing law; (8) the weight accorded the plaintiff's choice of forum; and (9) trial efficiency and the interests of justice." *SEC v. Hill Int'l, Inc.*, 20-CV-447, 2020 U.S. Dist. LEXIS 75514 (S.D.N.Y. Apr. 28, 2020) (quoting *Everlast*, 928 F. Supp. 2d at 743).

Though district courts have discretion to transfer a case under §1404, courts must give substantial deference to the plaintiff's choice of venue. *Steinberg & Lyman*, 690 F. Supp. at 266 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The burden of demonstrating the desirability of transfer lies with the moving party and, in considering the motion for transfer, a plaintiff's choice of forum will hold unless the defendant makes a clear and convincing showing that the balance of convenience favors his choice. *Berman v. Informix Corp.*, 30 F. Supp. 2d 653, 656 (S.D.N.Y. 1998).

Defendant moves to transfer venue either to the District of Arizona, where Nikola's headquarters are located and Defendant has a winter home, or the District of Utah, where Defendant resides. Under Section 20 of the Securities Act and Section 27 of the Exchange Act, venue is proper "in the district wherein the defendant is found or is an inhabitant or transacts business." 15 U.S.C. § 77v(a); 15 U.S.C. § 78aa. Both the District of Arizona and the District of Utah are proper venue, within the meaning of the federal securities laws, because Defendant transacts business, and lives part time, in the former and inhabits the latter. Accordingly, I must consider whether factors of convenience weigh in favor of transferring venue to either proposed venue.

*Convenience of Witnesses*

Defendant identifies three witnesses, which include his father and brother, and many other (nameless) colleagues that reside in Utah, and that he will likely call to testify about his lack of intent, the factual bases for his challenged statements, the status of Nikola's trucks and technology, and the robust vetting and approval processes that Defendant followed before making public statements. He also identifies three witnesses located in Arizona and alludes to many other Nikola colleagues that would be called to testify. He claims that it would be inconvenient for them to travel hundreds of miles.

The SEC responds that it intends to call witnesses located in New York and specifies the expected topics of their testimony. These include the Chairman of Nikola's Board of Director and one of the largest investors in the PIPE and VectoIQ, as well as multiple investor victims of Defendant's fraud who reside in and near this District. The SEC also expects to call witnesses that do not reside in New York, Arizona, or Utah, and for whom transfer would not make the litigation more or less convenient. As to Defendant's corporate witnesses, located in Arizona, the SEC further notes that when SEC staff sought to interview these executives in its investigation that preceded the filing of this action, all of them requested to have interviews conducted in New York, defeating Defendant's argument that they would be inconvenienced by having to travel to New York.

On balance, I do not find that the location of witnesses favors transfer. The various witnesses likely to testify are located in both the present and proposed districts, as well as outside of those districts. Defendant has offered no explanation as to why any of his witnesses would be unwilling to travel, particularly if he covered the expense, or if not, why their testimony could not be offered by deposition. At best, this factor is neutral.

*Convenience of the Parties*

Defendant contends that it would be more convenient for him to litigate in

14

Arizona or Utah, and that the SEC will not be inconvenienced by either. As to Arizona, Defendant claims that even though the SEC has no regional office in Arizona, because SEC counsel on this matter work out of the Fort Worth Office, Arizona is no more convenient than New York. As to Utah, he claims that it is convenient for the SEC because it has a regional office there. Defendant also contends that it would be more convenient for him because his longstanding counsel are located in Utah and Arizona. Defendant therefore concludes that the convenience of the parties favors transfer. I disagree.

The "purpose of § 1404(a) is not to shift the convenience from one party to another." *SEC v. Morton*, No. 10-CV-1720, 2011 WL 1344259, at *14 (S.D.N.Y. Mar. 31, 2011) (citation omitted), *adopted by* 2011 WL 11768504 (S.D.N.Y. Nov. 3, 2011). Transferring this litigation to Arizona would plainly inconvenience Plaintiff because it has no regional office there. And although the SEC may be less inconvenienced by a transfer to Utah, given the presence of its regional office, there is little other reason to transfer this case to Utah, aside from the presence of a few witnesses, which I found did not favor transfer. Also unavailing is Defendant's argument that his longstanding counsel resides in Arizona and Utah. Defendant has retained counsel in this matter who have offices in Washington, D.C. and New York, and who have mounted a more than adequate defense to date. Moreover, he has not explained why, if he wanted to be represented by his longstanding counsel, they could not apply for admission to practice *pro hac vice* in this District. On balance, this factor does not weigh in favor of transfer.

*Location of Operative Documents and Relative Ease of Proof*

Defendant claims that this factor weighs heavily in favor of transfer because his nontestimonal evidence will include bulky, heavy, and immoveable objects, such as Nikola concept vehicles and his hydrogen station, and which are located in Arizona. I disagree.

As a general rule, courts have consistently held that the "location of relevant documents is not a major consideration in an era of electronic records and eDiscovery."

15

*Datacatalyst, LLC v. Infoverity, LLC*, No. 20-CV-310, 2020 WL 1272199, at *4 (S.D.N.Y. Mar. 17, 2020) (citing cases). Defendant's stated intent to rely on physical evidence does suggest some serious logistical complications; however, I do not find this factor dispositive, nor does it weigh clearly in favor of transfer. The jury will be tasked with determining whether Defendant made false statements and misrepresentations about Nikola's products and technology between 2016 and 2020. Defendant fails to explain either how an inspection of those items at a trial in 2023 would be relevant to proving the veracity of his statements made between 2016 and 2020, or why the jury would need to perform a physical inspection of the physical evidence, *i.e.*, why photos, demonstratives, videos, and expert testimony would not be an adequate substitute. In short, although Defendant's use of physical evidence could pose logistical problems, he has failed to establish the relevance of that problem, or that the problem could not be overcome with alternative means of introducing the evidence and eliciting its relevance. Accordingly, I find that this factor does not favor transfer.

*Locus of Operative Facts*

Defendant contends that the locus of operative facts favors transfer because his allegedly false and misleading statements and other alleged acts in furtherance of the scheme took place outside of this District, and specifically in the District of Arizona and the District of Utah. The SEC responds that while some of the alleged misstatements and conduct may have taken place outside of this District, nontrivial acts in furtherance of, and necessary to, his scheme took place in this District, including the Business Combination, many alleged misstatements, and his use of the capital markets. In addition, the SEC notes the nationwide character of this scheme, which it contends diminishes the weight to be accorded to any particular forum.

On balance, I agree with the SEC. The locus of operative events does not weigh in favor of transfer. The place of alleged wrongdoing, principally Defendant's misrepresentations, is not limited to the district where he made those statements due to the

16

nationwide public dissemination of information which forms the basis of this suit. Moreover, critical events took place in this District, including the merger with VectoIQ, based in New York, and trading of Nikola stock on NASDAQ, also based in New York. Thus, I find that key events took place inside and outside of this District, rendering this factor neutral.

*Deference Owed to Plaintiff's Choice of Forum*

Defendant argues that the SEC's choice of forum should be given little to no deference because of the lack of material connections to New York discussed above. I disagree. As courts have recognized, the Securities Exchange Act was intended to provide the SEC with wide discretion in choosing the forum, *see SEC v. Thrasher*, No. 92-CV-6987, 1993 U.S. Dist. LEXIS 14970, at *5 (S.D.N.Y. Oct. 25, 1993) (citing cases), and because there are material connections to this forum, I find that the SEC's choice of forum should be accorded the deference due to any other plaintiff's choice of forum.

*Remaining Factors*

The remaining factors are either neutral or weigh against transfer. The parties agree that the relative means of the parties is neutral. Likewise, the respective forums' familiarity with the federal securities laws also is neutral. Although Defendant asserts that a court in Arizona or Utah will have greater ability to compel an unwilling witness to testify, he fails to identify any witnesses that he believes will claim unavailability. I decline to give weight to his mere speculation and accordingly find this factor neutral. Finally, judicial efficiency favors retaining this litigation. Defendant states that there are several private securities class actions pending in the District of Arizona; however, this does not weigh in favor of transfer because this action would not be consolidated with those pending. *See SEC v. KPMG*, NO. 03-CV-671, 2003 WL 1842871, at *2 (S.D.N.Y. Apr. 9, 2003) (denying motion to transfer to district where five private shareholder cases were pending). On the other side of the ledger, Defendant's criminal trial is proceeding in this District, notwithstanding Defendant's motion to transfer that

case to Arizona or Utah. *See* No. 21-CR-478, ECF No. 32 (denying motion to transfer venue). The SEC's case is more likely to resemble the criminal proceedings and, therefore, judicial economy weighs against transfer.

\* \* \*

In sum, because the relevant factors do not favor transfer or are otherwise neutral, Defendant has failed to make a clear and convincing showing that transfer to the District of Arizona or the District of Utah would be convenient for the witnesses and parties and in the interest of justice. Accordingly, the motion to transfer venue is denied.

## CONCLUSION

For the reasons provided above, the Government's motion to intervene and stay the civil proceeding is granted, and Defendant's motion to dismiss for improper venue or transfer venue is denied. The Clerk of Court shall terminate the open motions (ECF Nos. 12, 13, 21) and stay the case pending resolution of the criminal proceedings, on condition that the Government report on the status of the proceedings and promptly after any final determination of such proceedings. The first report shall be due on February 10, 2023.

SO ORDERED.

Dated:    August 8, 2022                  /s/ Alvin K. Hellerstein
            New York, New York       ALVIN K. HELLERSTEIN
                                       United States District Judge